UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE WAYNE KUBAT,<br><br>            Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No.  2:20-cv-1237-KJN<br><br><u>ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT</u><br><br>(ECF Nos. 17, 19.) |

     Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act.[1] In the motion for summary judgment, plaintiff contends the Administrative Law Judge ("ALJ") erred in failing to articulate legally appropriate reasons for rejecting (A) the medical opinions of (1) plaintiff's psychologist, and (2) plaintiff's medical doctor; and (B) plaintiff's subjective symptom testimony.  The Commissioner contends the ALJ's decision is supported by substantial evidence and free from legal error.

     For the reasons stated below, the court DENIES plaintiff's motion, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes.  (ECF Nos. 7, 8, 9.)

1

I.    **RELEVANT LAW**

The Social Security Act provides benefits for qualifying individuals with an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a) (Title II). An ALJ is to follow a five-step sequence[2] when evaluating benefit eligibility. 20 C.F.R. § 404.1520 (Title II). The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities," and for "translating and incorporating clinical findings into a succinct RFC [residual functional capacity]." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020); Rounds v. Comm'r, 807 F.3d 996, 1006 (9th Cir. 2015).

A district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Ford, 950 F.3d at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (Id.) Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld," and the court may not reverse the ALJ's decision on account of harmless error. (Id.) The court reviews the record as a whole—including evidence that both supports and detracts from the ALJ's conclusion—but may affirm based only on the reasons provided by the ALJ in the decision. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). "[T]he ALJ must provide sufficient reasoning that allows [the

---

[2]    The sequential evaluation is summarized as follows:
   **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
   **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
   **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
   **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
   **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford, 950 F.3d at 1148.

court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

## II. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In January of 2017,[3] plaintiff applied for Disability Insurance Benefits, alleging disability due to "Crohn's ileitis, abdomen pain, diarrhea, posttraumatic stress disorder, anxiety, body weakness due to lack of appetite, lack of sleep due to abdomen pain and diarrhea, and extreme joint pain in knees." (See Administrative Transcript ("AT") 184, electronically filed at ECF No. 11.) Plaintiff's application was twice denied, and plaintiff sought review with an ALJ and was appointed counsel. (See AT 92-96, 97, 98-102, 124-52.) The ALJ held a hearing on April 19, 2019, where plaintiff testified about his symptoms, and a Vocational Expert ("VE") testified regarding jobs for someone with similar limitations. (See AT 54-58.) On June 12, 2019, the ALJ issued a decision determining plaintiff was not disabled from his alleged onset date forward. (AT 20-33.)

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 12, 2016. (AT 23.) At step two, the ALJ noted plaintiff had the following severe impairments: Crohn's disease, posttraumatic stress disorder ["PTSD"] and anxiety. (Id.) At step three, the ALJ determined plaintiff was not disabled under the Listings. (AT 23-24, citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

As pertains to plaintiff's PTSD and anxiety, the ALJ found plaintiff was moderately limited in two of the four "paragraph B" criteria (interacting with others; and concentrating, persisting, or maintaining pace); had a mild limitation in one category (adapting or managing oneself); and had no limitation in the final category (understanding, remembering, or applying information). (AT 24.) The ALJ gave "good weight" to the opinions expressed by plaintiff's evaluating physician, Dr. Sunde, as well as the state agency mental consultants, Drs. Meyers and Kessler, because these opinions were "generally consistent with the overall record." (AT 30.) However, relevant here, Dr. Sunde opined that plaintiff was moderately limited in more areas

---

[3] Given this filing date was before March 27, 2017, the court applies the old regulations regarding medical opinions and "prior administrative medical findings." Cf. 20 C.F.R. § 404.1527 with 20 C.F.R. § 404.1527c.

than found by the ALJ.  (See AT 29.)

As pertains to plaintiff's Crohn's disease, relevant here, the ALJ gave "little weight to Dr. Eickhoff's opinion that (i) plaintiff's IBD would "constantly" interfere with his concentration and attention; (ii) his ability to sit or stand was limited to "less than two hours"; and (iii) he would be absent from work "more than four days per month."  (AT 654-55.)  The ALJ found this opinion "overly restrictive," inconsistent with the overall record, and "internally inconsistent."  (AT 30.) Further, the ALJ rejected the more limiting aspects of plaintiff's subjective symptom testimony because the claims about the "intensity, persistence, and limiting effects" of those gastrointestinal symptoms were "inconsistent with the overall record, which reveals that [plaintiff's] condition [is] not as debilitating as alleged."  (AT 27.)

The ALJ then determined plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except that plaintiff:

> . . . can lift 20 pounds occasionally and 10 pounds frequently; can stand and walk six hours; sit for six hours; [should avoid] hazards, heights, or dangerous moving machinery; must be within 100 feet of a restroom; [could take] restroom breaks [] during regular breaks; cannot work with the public; [can have] only occasional contact with co-workers; and [was limited to] unskilled work.

(AT 24.)  Based on this RFC and the VE's testimony, the ALJ concluded plaintiff was capable of performing at least two jobs that exist in significant numbers in the national economy.  (AT 32-33.)  Thus, the ALJ determined plaintiff was not disabled for the relevant period.  (AT 33.)

The Appeals Council denied plaintiff's appeal.  (AT 6-8.)  Plaintiff then filed this action requesting review of the ALJ's decision, and the parties moved for summary judgment.  (ECF Nos. 1, 10, 17, 19.)

### III.  DISCUSSION

Plaintiff contends the ALJ erred in failing to articulate legally appropriate reasons for rejecting:  (A) the medical opinions of (1) Dr. Sunde, an examining psychologist, and (2) Dr. Eickhoff, plaintiff's treating physician; as well as (B) plaintiff's subjective symptom testimony. Plaintiff requests remand for further proceedings.  (ECF Nos. 15, 17.)

The Commissioner seeks affirmance, arguing the ALJ's decision was supported by

substantial evidence and free from legal error.  (ECF No. 16.)

**A.     ALJ's Analysis of the Opinion Evidence at Step Two and in the RFC**

<u>**Legal Standards, Medical Opinion Evidence**</u>

The ALJ is required to consider a host of factors in deciding the weight given to any medical opinion, including the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, specialization, and any other factors deemed relevant.  20 C.F.R. § 404.1527(c)(1)-(6).  For cases filed before March 27, 2017, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals (the "Treating Physician Rule").  <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester</u>, 81 F.3d at 830.  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  <u>Holohan</u>, 246 F.3d at 1202.

In order to evaluate whether an ALJ properly rejected a medical opinion, the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  <u>Lester</u>, 81 F.3d at 831.  To reject the uncontradicted opinion of a treating or examining doctor, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence."  <u>Ryan v. Comm'r</u>, 528 F.3d 1194, 1198 (9th Cir. 2008).  Conversely, a contradicted opinion may be rejected for "specific and legitimate" reasons.  <u>Lester</u>, 81 F.3d at 830.  An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings."  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 2011).

While a treating professional's opinion generally is accorded superior weight under the Treating Physician Rule, if another medical professional's opinion (supported by different independent clinical findings) contradicts it, the ALJ is to resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes</u>, 881 F.2d at 751); <u>see also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1157 (9th Cir. 2001) (noting the regulations require the ALJ to weigh the contradicted treating physician opinion).  However, if the treating physician's opinion

is conclusory or supported by minimal clinical findings, the ALJ need not give it any weight. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.

The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831; but see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

**1.   Discussion of Dr. Sunde's Opinion from Plaintiff's Psychological Evaluation**

<u>**Legal Standards, Mental Impairment Evaluation**</u>

Allegations of disability due to any mental impairment requires an ALJ "to follow a special psychiatric review technique." Keyser v. Comm'r, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a) (in evaluating the severity of mental impairments, "we must follow a special technique at each level in the administrative review process"). First, the ALJ must determine whether plaintiff has any "medically determinable mental impairment(s)," i.e., those that "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . [as] established by objective medical evidence from an acceptable medical source." § 404.1521. Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in four main areas:  (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) and adapting or managing oneself. 20 C.F.R. § 404, Subpt. P, Appx. 1 (paragraph B). To be deemed disabled under the Listings for (relevant here), posttraumatic stress disorder/anxiety, the ALJ checks for an 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." See Id. at Listing 12.00A "Mental Disorders"; see also 20 C.F.R. § 404.1520a(c)(4) and (d)(1)-(3) (noting use of a five-point scale of "[n]one, mild, moderate, marked, and extreme," and generally directing that a rating of "none" or "mild" will result in a non-severe finding, while "severe" findings require a

comparison to the Listings and consideration at the RFC stage).

**Analysis**

Plaintiff claims the ALJ failed to state reasons for why certain "key moderate limitations" identified by Dr. Sunde were rejected. Specifically, plaintiff claims the decision omits a resolution of Dr. Sunde's expressed limitations regarding plaintiff's ability to (1) maintain persistence and pace in a normal workplace setting; (2) interact appropriately with supervisors; (3) comply with job rules such as safety and attendance; and (4) respond to change in normal workplace settings.[4] (See AT 389-90.) Generally speaking, the ALJ gave "good weight" to Dr. Sunde's opinion, despite not signing on to all of his expressed "moderate" limitations. (AT 30.)

To start, the undersigned finds no issue with the ALJ's treatment of Dr. Sunde's opinion regarding plaintiff's ability to concentrate, persist, and maintain pace. Dr. Sunde assigned a "moderate" limitation to plaintiff in this area, and the ALJ agreed. (Cf. AT 390 with AT 24.) Based on this assessment, the ALJ limited plaintiff to unskilled work. (AT 24.) This determination was not error. See Mogensen v. Saul, 775 F. App'x 917, 917-18 (9th Cir. 2019) (concluding that an ALJ's translation of moderate concentration or pace limitations into an "unskilled work" RFC was not improper) (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-75 (9th Cir. 2008)).

As to plaintiff's ability to interact with supervisors, the undersigned finds little daylight between Dr. Sunde's opinion and the ALJ's decision in this area. Dr. Sunde found plaintiff moderately limited in his ability to interact with others, and the ALJ appears to agree. (Cf. AT 390 with AT 24.) Based on this fact, the ALJ assigned an RFC for plaintiff with no public contact and only "occasional contact with co-workers." (AT 24.) Plaintiff contends the ALJ's

---

[4] Plaintiff does not contend that, even giving full weight to Dr. Sunde's opinion, a finding of disabled under the Listings would have resulted. See 20 C.F.R. § 404, Subpt. P, Appx. 1 at Listing 12.00A "Mental Disorders" ("If your neurological disorder results in an extreme limitation in at least one . . . area[] of mental functioning, or [a] marked limitation in at least two areas," this limitations may meet a listing). Plaintiff instead appears to allege that, had Dr. Sunde's opinion been fully considered, it could have led to a crafting of a disabling RFC. Thus, if the ALJ failed to provide legally appropriate reasons for rejecting the above four opinions, harmful error would have resulted.

failure to also explicitly assign a limitation for supervisors was error. However, it is clear this limitation is subsumed in the co-worker limitation. Brown-Hunter, 806 F.3d at 492 (counseling affirmance where the ALJ's "path may reasonably be discerned"). But even if the ALJ intended for an RFC restricting plaintiff's contact with the public and co-workers but placing *no* restrictions on contact with supervisors, this would not have been in error. Throughout the decision, the ALJ cited to Dr. Sunde's findings after the consultative exam. Dr. Sunde noted plaintiff's speech was "logical and linear," his eye contact was "good," and plaintiff was "alert, cooperative, and appear[ed] to be a reliable informant." (AT 389.) The ALJ also noted Dr. Meyers's opinion that plaintiff could ask questions and request assistance, could "get along with co-workers or peers without districting or exhibiting behavioral extremes," and could maintain "socially appropriate behavior." (AT 30.) The ALJ's findings in this area are supported by substantial evidence. See, e.g., Oliver v. Comm'r, 2020 WL 977892, at *10 (E.D. Cal. Feb. 28, 2020) (knowledge of claimant's history is a proper factor in evaluating the weight to give a medical source's opinion).

Finally, there is some difference between the ALJ's RFC and Dr. Sunde's assignment of "moderate" limitations in plaintiff's ability to comply with safety and attendance rules and to respond to workplace changes. (AT 390.) Plaintiff contends these limitations were not explicitly rejected in the decision, but were merely mentioned in passing. The question is whether the ALJ provided sufficient explanation for her treatment of these limitations. The undersigned finds the ALJ's path can be reasonably discerned. Brown-Hunter, 806 F.3d at 492. First, the ALJ assigned "mild" to plaintiff's ability to adapt or manage himself, and found "no limitation" in his ability to understand, remember, or apply information. (AT 24.) Second, the ALJ limited plaintiff to unskilled work. (AT 24.) Third, the ALJ assigned "good" weight to Dr. Sunde's opinion. (AT. 30.) These paragraph B findings, decision not to assign full weight to Dr. Sunde's opinion, and limitation in the RFC reasonably express a rejection of Dr. Sunde's two "moderate" findings. Brown-Hunter, 806 F.3d at 492. Further, the rejection of these was supported by substantial evidence, as detailed by the ALJ throughout the decision. (See, e.g., AT 28 (noting plaintiff's being "alert and oriented" with "appropriate judgment and insight" at mental status exam); Id.

(noting Dr. Sunde's observation that plaintiff's "abstract thinking," "insight and judgment" were "intact," and he could "provide similarities and differences"); AT 29 (noting plaintiff "was capable of managing his own finances" despite small errors) (citing AT 389).)

### 2. Discussion of Dr. Eickhoff's Opinion from Plaintiff's IBD Examinations

**Analysis**

Plaintiff challenges the ALJ's rejection of Dr. Eickhoff's opinion as pertains to plaintiff's "attention and concentration, unscheduled restroom breaks, the need to lie down or rest unpredictably, and absenteeism." (ECF 17.) Dr. Eickhoff offered his opinion as plaintiff's treating physician, after a course of treatment, imaging tests, and prescription of several medications over a period of months. The ALJ assigned "little weight" to Dr. Eickhoff's opinion because it was "overly restrictive," inconsistent with the overall record, and was internally inconsistent. (AT 30.) The ALJ instead crafted an RFC based on portions of Dr. Eickhoff's opinion, the opinions of two non-examining physicians, and other medical evidence in the record. (See AT 26-27 (ALJ's summary of the medical evidence in the record); AT 30-31 (ALJ's resolution of the medical opinion evidence).) The question is whether the ALJ's rejection of portions of Dr. Eickhoff's opinion was legally permissible, and whether the remaining evidence the ALJ relied upon constitutes substantial evidence. The court finds that, despite some inconsistencies in the ALJ's opinion, no reversible error exists.

Dr. Eickhoff's opinion of the severity of plaintiff's limitations was reflected in a May 2019 Functional Capacity Questionnaire. (AT 653-55.) First, Dr. Eickhoff noted that plaintiff would need to take approximately one unscheduled restroom break per hour and take occasional rest breaks as well. (Id.) Yet, when the Questionnaire asked Dr. Eickhoff to specify "how often . . . this will happen . . . per hour/day" he simply wrote "1." (Id.) Second, Dr. Eickhoff provided on question 14 of the Questionnaire that plaintiff's need for restroom breaks would "constantly" interfere with his "attention and concentration" needed for work tasks. (AT 655.) Yet, in contradiction of this box checking on the Questionnaire, Dr. Eickhoff also wrote "normal" in the margins to this question. (AT 655.) The ALJ gave little weight to Dr. Eickhoff's opinions here based on this internal inconsistency yet still incorporated the thrust of Dr. Eickhoff's opinion into

9

the RFC. This was permissible. Ford, 950 F.3d at 1155 ("[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (quoting Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)).

The ALJ also properly addressed the inconsistency between the more restrictive elements of Dr. Eickhoff's opinion and the medical record as pertains to plaintiff's alleged likely absenteeism. Dr. Eickhoff noted plaintiff's IBD would cause both "good days" and "bad days" and that this would result in plaintiff likely being absent from work approximately four days per month. (AT 655.) Yet, the ALJ noted that there was "no explanation provided" for this estimated absenteeism. (AT 31.) See Ford, 950 F.3d at 1154 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Further, the ALJ referred to contradictory treatment records around January 2017 that revealed several instances of "improvement" of plaintiff's symptoms. (See AT 27 citing AT 417 (noting improvement with balsalazide); AT 410 (noting "some relief" with prednisone); AT 590 (citing improvement of nausea with Zofran); AT 567 (noting improvement with weekly dosages of Humira and improvement with Entocort).) The waxing and waning nature of IBD is recognized in the Listings. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("Remissions and exacerbations of variable duration are the hallmark of IBD."); Andrews, 53 F.3d at 1041 (noting the ALJ is tasked with resolving such inconsistencies in the record).

The ALJ then discussed the lack of inconsistency of Dr. Eickhoff's opinions when compared to the findings of the State agency medical consultants: Drs. Dipsia and Harper. (AT 29.) Dr. Dipsia opined that plaintiff "could perform a range of light exertional work, . . . should avoid concentrated exposure to hazards and needs to be close to a bathroom." (Id.) The ALJ gave Dr. Dipsia's opinion "great weight because it is consistent with the overall record." (Id.) Dr. Harper's opinion differed from Dr. Dipsia's only insofar as he stated that plaintiff had "no exertional, postural, manipulative, visual, or communicative limitations." (Id.) The ALJ gave this portion of Dr. Harper's opinion "little weight" as the "environmental limitations" included in the RFC are "consistent with the overall record and supported by the claimant's treatment history." While simply a difference of opinion between a treating physician and a non-examining

physician cannot *alone* justify the rejection of a treating or examining physician, here, it was paired with the ALJ's reliance on imaging results, contrary reports from two State agency doctors, and internal inconsistencies in the treating physician's report.  See Lester, 81 F.3d at 831 (citing other evidence such as, laboratory test results, contrary reports, and plaintiff testimony that conflicted with treating physician's opinion as substantial evidence justifying ALJ's rejection of treating physician's opinion).

While the ALJ had specific and legitimate reasons for discounting the more restrictive elements of Dr. Eickhoff's opinion, she still incorporated much of that opinion in crafting plaintiff's RFC.  In the RFC, the ALJ required that plaintiff "must be within 100 feet of a restroom" and that plaintiff could stand, walk, and sit for a maximum of 6 hours per day.  (AT 24.)  Ford, 950 F.3d at 1154 (It is the ALJ's responsibility to "translat[e] and incorporate[e] clinical findings into a succinct RFC.").  For these reasons, the ALJ's treatment of Dr. Eickhoff's opinion is free from legal error.

**C.    Subjective Symptom and Lay Testimony**

**Legal Standards, Subjective Symptom Testimony**

In evaluating a claimant's symptoms testimony, the following analysis is used:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant is not required to show the impairment caused the severity of the symptom alleged, nor required to produce objective medical evidence thereof.  Instead, the claimant only need show the impairment could reasonably have caused some degree of the symptom.  If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (noting the clear and convincing standard is not easy to meet, and is "the most demanding [standard] required in Social Security cases").

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony."  Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th

Cir. 2015). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." Treichler v. Comm'r, 775 F.3d 1090, 1102 (9th Cir. 2014).

Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony can include the effectiveness of or noncompliance with a prescribed regime of medical treatment, a record of conservative treatment, inconsistencies between a claimant's testimony and his or her conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical evidence alone is insufficient grounds to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. 20 C.F.R § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Broadly speaking, a claimant's statements of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a); Treichler, 775 F.3d at 1106.

**Analysis**

Here, the ALJ began her analysis of plaintiff's subjective symptom testimony with the oft-repeated statement that while plaintiff's testimony generally aligned with the medical evidence, his "statements concerning the intensity, persistence and limiting effects of his symptoms . . . are inconsistent with the overall record, which reveals that [plaintiff's] condition is not as debilitating as alleged." (AT 22.) Plaintiff claimed that he stopped working on December 12, 2016, because of his IBD and PTSD. The ALJ extensively listed plaintiff's complaints of, among other things, abdominal pain, fatigue, diarrhea, body weakness, disturbed sleep, and anxiety. Plaintiff also claimed to miss out on social activities because of his Crohn's disease, as well as that he has periods of "flare-ups" where his gastrointestinal symptoms become more acute. (AT 44-54.)

The ALJ relied on a lack of corroborating objective medical evidence to support her decision to discount plaintiff's subjective symptom testimony. See Tommasetti, 533 F.3d at 1040 (concluding a favorable response to a conservative course of care undermines subjective testimony about the "disabling nature of [claimant's] pain"). As discussed above, despite

12

plaintiff's extended description of his ailments, the ALJ noted a series of records from January 2017 onwards that indicated treatment and improvement in plaintiff's symptoms. (See AT 27 (citing four different treatment records throughout 2017 that indicated improvement in plaintiff's condition)); see 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("Remissions and exacerbations of variable duration are the hallmark of IBD."). The ALJ also noted that despite plaintiff's claims of "difficulty maintaining his weight," in fact, his weight either remained constant or increased. (AT 27); see 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (contemplating "involuntary weight loss" as a symptom that can meet a listing requirement); see Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (highlighting "inconsistencies" between subjective symptom statements and the objective medical evidence in the record as a "significant and substantial reason" to reject those statements). The ALJ also considered plaintiff's claim that he needed to use the restroom "three times an hour . . . for 10 to 15 minutes each time," but found that this claim had never been reported to any of plaintiff's doctors. (AT 27); Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005) (noting that while a "lack of medical evidence cannot form the *sole* basis for discounting pain testimony, it is a factor that the ALJ can consider"). The ALJ properly concluded that specific complaint was not supported in the record. See Lester, 81 F.3d at 834 ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). Finally, the ALJ again referred to the numerous treatments that plaintiff admitted had improved his condition along with imaging results that indicated "mild interstitial prominence," and otherwise unremarkable findings.[5] (AT 26, 31.)

For these reasons, the ALJ did not err in discounting plaintiff's subjective symptom

---

[5] The court notes the imprecision of the ALJ's treatment of several of plaintiff's symptoms in the decision. The ALJ stated quite broadly that "despite [plaintiff's] allegations, he denied fecal incontinence, blood in stool, vomiting, abdominal pain." (See AT 27; (citing Ex. 1F/1 [AT 283]; 5F/13 [AT 405]; 6F/5 [AT 414]; 9F/26 [AT 570]; 10F/1 [AT 590], 15 [AT 604], 31 [AT 620]).) However, at Exhibit 1F/1, plaintiff did deny fecal incontinence and blood in stool, but also claimed "sharp" abdominal pain. (AT 283.) At Exhibit 6F/5, plaintiff denied vomiting, but claimed "frequent[]" fecal incontinence, "blood tinged" diarrhea, and abdominal pain. (AT 414.) At Exhibit 10F/31, plaintiff denied any symptoms other than a "laceration to his right hand," which the ALJ cited, but this was during a visit to the emergency room for a dog bite (AT 620.) While these references to the record are certainly imprecise, they do not detract from the clarity and convincing nature of the ALJ's conclusions.

testimony.  Treichler, 775 F.3d at 1102; see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) ("[I]f the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."); Morgan, 169 F.3d at 599-600 (noting that where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld).

IV.     **CONCLUSION**

Accordingly, for all of the above reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;
2. The Commissioner's cross motion (ECF No. 16) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court shall issue judgment in defendant's favor and close this case.

Dated:  October 7, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

kuba.1237